# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT KNOXVILLE
Assigned on Briefs October 26, 2010

## STATE OF TENNESSEE v. DWIGHT A. SHANKLE

**Direct Appeal from the Circuit Court for McMinn County**
**No. 09-086     Carroll L. Ross, Judge**

**No. E2010-01046-CCA-R3-CD - FILED APRIL 21, 2011**

The defendant, Dwight A. Shankle, was convicted of facilitation of promotion of the manufacturing of methamphetamine, a Class E felony. He was sentenced to four years in the Tennessee Department of Correction as a Range III, persistent offender. On appeal, he argues that the evidence was insufficient to support his conviction and that the indictment was faulty. After careful review, we affirm the judgment from the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

JOHN EVERETT WILLIAMS, J., delivered the opinion of the Court, in which JERRY L. SMITH and NORMA MCGEE OGLE, JJ., joined.

J. McMurray Johnson, Athens, Tennessee, for the appellant, Dwight A. Shankle.

Robert E. Cooper, Jr., Attorney General and Reporter; David H. Findley, Senior Counsel, Criminal Justice Division; Robert Steven Bebb, District Attorney General; and Andrew M. Freiberg, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

According to the theory espoused by the State in the trial court, the defendant in this case befriended a female, gained access to her home, and then brought in all the components necessary to run a methamphetamine ("meth") lab. He then cooked methamphetamine in her home and intentionally left behind some of the materials he used in the bedroom of her young son. After leaving, he called the police with an anonymous tip regarding the existence of a methamphetamine lab in the woman's home, planning for the materials that he left behind to be found there. After the homeowner, along with another woman present at the scene, were arrested and taken away by the police, the defendant moved into the newly-vacant home, which he then used for his own purposes. Only by the most serendipitous stroke of

fate was the defendant's scheme uncovered; but for a young boy's love and concern for his dog, the defendant's ruse might have evaded detection.

Prosecution's theory aside, the following facts were attested to by witnesses at trial. On January 25, 2009, the McMinn County Sheriff's Department received an anonymous call that there was a methamphetamine lab in a home on County Road 55. Deputy Andy Moser, an officer with considerable experience in detecting and investigating methamphetamine labs, responded to the call. Once there, he obtained consent to search the property from its resident, Ms. Sandra Norwood. Inside the home, in the bedroom of Ms. Norwood's twelve-year-old son, the deputy found a wide variety of items commonly used in the manufacture of methamphetamine. These items included a near-empty container of Coleman fuel, two quart-sized bags of lye, a one quart-sized Mason jar containing solvent, a bottle cap with six inches of quarter-inch tubing attached, a hair dryer, a butane torch, and a plastic bottle containing solvent, fertilizer, and flakes of lithium. All of these items were found grouped together in luggage in one spot of the child's bedroom. The deputy testified how each item he discovered is used in a particular method of manufacturing methamphetamine, known as the "shake and bake" method. The deputy also testified that during his search of the child's bedroom, he found a black wallet containing thirteen dollars that was not taken into evidence.

Deputy Moser arrested Sandra Norwood and another woman, Amanda Carter, at the scene. He also sealed the property with "Do Not Enter" quarantine notices (such notices being necessary because the individual components found in methamphetamine labs are variously toxic, unstable, explosive, inflammable, and generally highly dangerous to anyone in the vicinity). That evening, Sandra Norwood's son contacted the police, seeking permission to enter the residence for purposes of retrieving his dog. Deputy Moser agreed and returned to the house to supervise and ensure the safety of those entering the premises. The defendant was discovered inside the residence by those entering, sleeping in Sandra Norwood's bed. Deputy Moser arrested the defendant, who was found to be in possession of the same black wallet containing thirteen dollars that the deputy had previously seen in the son's bedroom near the methamphetamine lab components.

Ms. Sandra Norwood testified that she knew the defendant through another friend. The defendant had arrived at her home late on the night of Wednesday, January 21, 2009, claiming to have no place to stay, and she had given him permission to stay at her home overnight. When she saw the defendant shaking a bottle containing noxious chemicals used to make methamphetamine, she asked the defendant to leave. The defendant threatened to throw the chemicals in her face, and she dropped the issue. Rather than call the police, she permitted him to stay the night and believed that he left the next day. The following day, Friday, January 23, 2009, she left town for the weekend.

When she returned, on Sunday, January 25, 2009, she asked her friend, Amanda Carter, to come to her residence to give her a ride to the store. After Ms. Carter arrived, the two were surprised by the arrival of Deputy Moser, who requested to search the premises. Believing she had nothing to hide, Ms. Norwood gave consent and was surprised when the officer found sundry methamphetamine lab components in her son's bedroom. Amanda Carter further testified that after the two were arrested, and following a couple of court dates, she ran into the defendant, who told her "not to worry," that he would "take the fall" because it was "his shit."

On March 17, 2009, the McMinn County Grand Jury indicted Mr. Shankle on one count of Promotion of the Manufacture of Methamphetamine, in violation of Tennessee Code Annotated section 39-17-433(a)(1). The case was tried before a jury in the Criminal Court for McMinn County, Tennessee, on October 28, 2009. The State presented the testimony of Deputy Andy Moser, Ms. Sandra Norwood, and Ms. Amanda Carter as described above.

Mr. Shankle was advised of and waived his right to testify in his own defense, pursuant to the procedures described in *Momon v. State*, 18 S.W.3d 152, 162-64 (Tenn. 1999), and the defense presented no other witnesses. Later that same day, the jury acquitted him of the felony promotion charge but found him guilty of the lesser included offense of Facilitation of Promoting the Manufacture of Methamphetamine, in violation of Tennessee Code Annotated section 39-11-403. The defendant was sentenced to four years incarceration on November 30, 2009. He filed a timely motion for a new trial, which was denied on April 12, 2010, and this appeal followed.

Analysis

On appeal, the defendant raises two issues: (1) the evidence was insufficient to support his conviction, and (2) the indictment against him was insufficient because it incorrectly listed his middle initial. We address each claim in turn.

I.

When an accused challenges the sufficiency of the evidence, this court must review the record to determine if the evidence adduced during the trial was sufficient "to support the finding by the trier of fact of guilt beyond a reasonable doubt." Tenn. R. App. P. 13(e). This rule is applicable to findings of guilt predicated upon direct evidence, circumstantial evidence, or a combination of direct and circumstantial evidence. *State v. Brewer*, 932 S.W.2d 1, 18 (Tenn. Crim. App. 1996). In determining the sufficiency of the evidence, this court does not reweigh or reevaluate the evidence. *State v. Cabbage*, 571 S.W.2d 832, 835 (Tenn. 1978). Nor may this court substitute its own inferences for those drawn by the trier

of fact from circumstantial evidence. *Liakas v. State*, 286 S.W.2d 856, 58-59 (1956). To the contrary, this court is required to afford the State the strongest legitimate view of the evidence contained in the record, as well as all reasonable and legitimate inferences that may be drawn from such evidence. *State v. Elkins*, 102 S.W.3d 578, 581-82 (Tenn. 2003).

The trier of fact, not this court, resolves questions concerning the credibility of the witnesses, the weight and value to be given the evidence, as well as all factual issues raised by the evidence. *Id.* at 581. In *State v. Grace*, the Tennessee Supreme Court stated that "[a] guilty verdict by the jury, approved by the trial judge, accredits the testimony of the witnesses for the State and resolves all conflicts in favor of the theory of the State." 493 S.W.2d 474, 476 (Tenn. 1973). Because a jury's verdict of guilty removes the presumption of innocence and replaces it with a presumption of guilt, the accused has the burden in this court of illustrating why the evidence is insufficient to support the verdict returned by the trier of fact. *State v. Tuggle*, 639 S.W.2d 913, 914 (Tenn. 1982); *Grace*, 493 S.W.2d at 476.

The defendant contends that the proof is insufficient to support his conviction because he was not convicted of the offense for which he was originally indicted – promoting the manufacture of methamphetamine in violation of Tennessee Code Annotated section 39-17-433(a)(1) – but, instead, only of facilitating that same offense. Section 39-17-433(a)(1) criminalizes the "[s]ell[ing], purchas[ing], acquir[ing], or deliver[ing of] any chemical, drug, ingredient, or apparatus that can be used to produce methamphetamine, knowing that it will be used to produce methamphetamine, or with reckless disregard of its intended use." T.C.A. § 39-17-433(a)(1). The defendant was not found guilty of this offense.

However, the defendant was convicted of the lesser included offense of facilitation of felony promotion of the manufacture of methamphetamine. "A person is criminally responsible for the facilitation of a felony, if, knowing that another intends to commit a specific felony, but without the intent required for criminal responsibility under [section] 39-11-402(2), the person knowingly furnishes substantial assistance in the commission of the felony." T.C.A. § 39-11-403(a). The defendant contends that the State did not prove that he knowingly provided substantial assistance to any *other* person in their commission of felony promotion.

The defendant is not entitled to relief on this issue because the proof in the record is sufficient to support a conviction on the greater charge of felony promotion. Where evidence exists to support all elements necessary to uphold a defendant's conviction of a greater offense, a defendant's conviction of a lesser included offense will be upheld, even if there is some deficiency in the proof of its elements. This court has recently upheld this principle in both *State v. Joshua Lynn Parker*, No. E2008-02541-CCA-R3-CD, 2010 Tenn. Crim. App. LEXIS 795, at **34-40 & n.5 (Tenn. Crim. App. at Knoxville, Sept. 22, 2010), and *State v.*

*Alfred Turner*, No. W2007-00891-CCA-R3-CD, 2010 Tenn. Crim. App. LEXIS 530, at **12-17 (Tenn. Crim. App. at Jackson, June 22, 2010). In both of these murder cases, this court followed the case of *State v. Mellons*, which stated:

> On appeal, a conviction of a lesser degree of the crime charged, or of a lesser included offense, will be upheld, even if there is no evidence in the record to establish the technical elements of that crime, if the evidence demands a conviction of a higher degree of [the crime] than that found by the verdict, and there is either no evidence in support of acquittal of the greater crime, or if there is, the verdict of the jury clearly indicates that the evidence in support of acquittal was disbelieved, on the theory that the defendant was not prejudiced by the charge and the resulting verdict.

557 S.W.2d 497, 499 (Tenn. 1977).

Here, the record evidence would support a conviction of Tennessee Code section 39-17-433(a)(1), on the grounds that the defendant acquired chemicals or ingredients knowing that they would be used (by him) to produce methamphetamine. This evidence includes the testimony of Ms. Sandra Norwood that the defendant arrived at her home carrying a large duffel bag; that he stayed in her son's bedroom where the methamphetamine lab components and chemicals were later discovered; that, at one point, she saw him shaking a bottle of chemicals that she recognized as being commonly used in the manufacture of methamphetamine; and that, when she asked him to leave, he threatened to throw the chemicals in her face – a gesture revealing his acute awareness of the precise nature of the bottle's contents and the harm that they were capable of causing if released. Ms. Norwood's testimony is bolstered by Ms. Amanda Carter's further testimony that the defendant told her after a court hearing that the chemicals and ingredients discovered by the police belonged to him. This evidence is sufficient to support a finding that the defendant was knowingly in possession of items that could be used and that he intended to use to produce methamphetamine – all of the elements necessary to support the defendant's conviction of the greater crime of felony promotion. Consequently, pursuant to *Mellons*, the defendant's conviction of the lesser included offense of facilitation of felony promotion will be upheld, regardless of whether there was any deficiency in the proof of its elements.

## II.

In his indictment, the defendant's name is incorrectly shown as "Dwight A. Shankle" instead of "Dwight J. Shankle." The defendant contends that this defect in the indictment causes uncertainty as to whether or not he was the person charged therein and requests belated relief based on the indictment's legal insufficiency. We are not inclined to grant his

request.

Defenses and objections based upon defects in an indictment must be raised prior to trial or they are waived, unless they relate to the court's lack of subject matter jurisdiction or to the failure of the indictment to charge an offense. *See*, *e.g.*, Tenn. R. Crim. P. 12(b)(2), (f); *State v. Nixon,* 977 S.W.2d 119, 120-23 (Tenn. Crim. App. 1997). The particular indictment defect raised by this defendant is of neither sort. Defects involving the identity of the person charged relate to form rather than substance and are waived if not raised before trial. *Nixon*, 977 S.W.2d at 121. The defendant must overcome this waiver by demonstrating actual prejudice. *Id.*

The defendant claims actual prejudice because (1) a pretrial motion to dismiss the indictment would likely have succeeded, and (2) because he was in custody during the pendency of this case, he was unable to personally review the indictment, discover the defect, and alert his counsel so a proper pretrial motion could be filed. Even assuming *arguendo* that these claims are true, they do not suffice to establish actual prejudice as required by *Nixon*. With respect to defects in an indictment involving the name of the party charged, prejudice does not turn on whether or not a pretrial motion to dismiss the indictment would have succeeded. Instead, the critical issue is whether or not the defendant was affirmatively misled or misinformed as to whether or not he was the person charged. *See id*. at 121-22. Nor does the fact that the defendant could not review the documents pertaining to his case at his leisure to discover the error provide any grounds for relief. Defendants are often incarcerated prior to trial. While there, they will most likely be given the opportunity to communicate with their counsel only at particular times and in particular places and manners. Nonetheless, during the meetings they are afforded with counsel, both defendants and their lawyers are expected to communicate with each other to the extent necessary to explore all of their options concerning potential claims and defenses and to establish a viable trial strategy.

There is no argument made here that the defendant was prevented from meeting with his lawyer during his incarceration to such an extent that he was deprived of his Sixth Amendment right to counsel. Consequently, viewed in its most favorable light, the defendant's failure to discover the defect in his indictment was simply the result of his failure to communicate properly with his lawyer during their jailhouse meetings. Their failure to communicate at appropriate times cannot serve as an excuse for the defendant's waiver.

Moreover, we observe with some concern that the defect in the defendant's indictment was not brought to the trial court's attention promptly once a copy of the indictment, the defendant, and his lawyer, were first all united together in the courtroom in preparation for trial. Instead, by the defendant's own admission, it was not raised until after "the jury had

been sworn and jeopardy had attached." While this could be the result of common happenstance, such situations have arisen in the past as a result of "sandbagging" techniques intentionally used by defense lawyers for the benefit of their clients. *See id.* at 122. We have previously criticized this type of sandbagging behavior, explaining that Rule 12(f) of the Tennessee Rules of Criminal Procedure was specifically intended to put a stop to such practices and provide defendants with the proper incentive to raise these types of claims in a pretrial motion. *See id.* We reaffirm that criticism today, hold that the defendant suffered no actual prejudice from the misspelling of his name in the indictment, and find that his claim regarding any such defect has been duly waived.

CONCLUSION

For the reasons given above, after reviewing the record as a whole, we affirm the judgment from the trial court.

_____
JOHN EVERETT WILLIAMS, JUDGE